UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| COMPRESSION TECHNOLOGY SOLUTIONS LLC, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No: T/B/D |
| v. | ) ) | JURY TRIAL DEMANDED |
| CA, INC., EMC CORPORATION, HEWLETT-PACKARD COMPANY, INTERNATIONAL BUSINESS MACHINES CORP., NETAPP, INC., QUANTUM CORP., AND QUEST SOFTWARE, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Compression Technology Solutions LLC ("CTS") files this action for patent infringement against Defendants CA, Inc., EMC Corporation, Hewlett-Packard Company, International Business Machines Corp., NetApp, Inc., Quantum Corp. and Quest Software, Inc. seeking damages and injunctive relief. CTS alleges as follows:

### NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., alleging infringement of United States Patent No. 5,414,650, ("the '650 patent"). A copy of the '650 patent is attached hereto as Exhibit A and is incorporated herein by reference in its entirety.

## JURISDICTION AND VENUE

2.      This Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

3.      This Court has personal jurisdiction over the Defendants because each defendant has conducted business in this district and has infringed CTS's patent in this district as alleged in this Complaint (at a minimum by offering for sale and/or selling equipment/software which falls within the scope of the claims of the '650 patent).

4.      Moreover, upon information and belief, Defendants continue to conduct business in this district and infringe the '650 patent in this district.

5.      Further, upon information and belief, this Court has personal jurisdiction over the Defendants pursuant to Missouri's Long-Arm Statute, Mo. Rev. Stat. § 506.500.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b), 1391(c) and/or 1400(b), in that a substantial part of the events giving rise to CTS's claims occurred in the Eastern District of Missouri and the Defendants are subject to personal jurisdiction in the Eastern District of Missouri (and thus for purposes of venue the Defendants reside in the District of Missouri).

## THE PARTIES

7.      Plaintiff CTS is a limited liability company organized and existing under the laws of Missouri, having a principal place of business at 6136 Frisco Square Blvd., Suite 385, Frisco, TX 75034.

8.      Upon information and belief and after a reasonable opportunity for further discovery, Defendant CA, Inc ("CA"), d/b/a CA is a corporation organized and existing under the laws of the state of Delaware, having a principal place of business at One CA Plaza, Islanda,

2

NY11749 with an office at 16305 Swingley Ridge Rd. #400, Chesterfield, MO 63017. CA's

registered agent for service of process in the state of Missouri is United States Corporation Co.,

221 Bolivar Street, Jefferson City, MO 65101.

9.      Upon information and belief and after a reasonable opportunity for further

discovery, Defendant EMC Corporation, ("EMC") is a corporation organized and existing under

the laws of the state of Massachusetts, having a principal place of business at 176 South Street,

Hopkinton, MA 01748 with an office at 600 Emerson Rd. Ste 400, St. Louis, MO 63141.

EMC's registered agent for service of process in the state of Missouri is CT Corporation System,

120 South Central Avenue, Clayton, MO 63105.

10.     Upon information and belief and after a reasonable opportunity for further

discovery, Defendant Hewlett-Packard Co., ("HP") is a corporation organized and existing under

the laws of the state of Delaware, having a principal place of business at 3000 Hanover St., Palo

Alto, California, 94304 with offices at 721 Emerson Rd, Ste. 200, St. Louis, MO 63141. HP's

registered agent for service of process in the state of Missouri is CT Corporation Company at

120 South Central Ave., Clayton, MO 63105.

11.     Upon information and belief and after a reasonable opportunity for further

discovery, Defendant International Business Machines Corp. ("IBM"), is a corporation organized

and existing under the laws of Delaware, having a principal place of business at New Orchard

Rd., Armonk, NY 10504 with offices at 1831 Chestnut St., St. Louis, MO 63103. IBM's

registered agent for service of process in the state of Missouri is Brian Francis Whitney at 220

Walden Court, Eureka, MO 63026.

12.     Upon information and belief and after a reasonable opportunity for further

discovery, Defendant NetApp, Inc. ("NetApp") is a corporation organized and existing under the

laws of the state of Delaware, having a principal place of business at 495 East Java Drive,

Sunnyvale, California 94089 with an office at 400 Chesterfield Center # 419, Chesterfield, MO

63017-4834. NetApp's registered agent for service of process in the state of Missouri is CT

Corporation System, 120 South Central Avenue, Clayton, MO 63105.

13.     Upon information and belief and after a reasonable opportunity for further

discovery, Defendant Quantum Corporation ("Quantum") is a corporation organized and existing

under the laws of the state of Delaware, having a principal place of business at 1650 Technology

Drive, #700, San Jose, CA 95110. Quantum's registered agent for service of process in the state

of California is CT Corporation System, 818 W. Seventh Street, Los Angeles, CA 90017.

14.     Upon information and belief and after a reasonable opportunity for further

discovery, Defendant Quest Software, Inc. ("Quest") is a corporation organized and existing

under the laws of the state of California, having a principal place of business at 5 Polaris Way,

Aliso Viejo, CA 92656. Quest's registered agent for service of process in the state of California

is CT Corporation System, 818 W. Seventh Street, Los Angeles, CA 90017.

## THE PATENT IN SUIT

15.     The '650 patent entitled "Parsing Information Onto Packets Using Context-

Insensitive Parsing Rules Based On Packet Characteristics" was duly and legally issued on May

9, 1995.

16.     The assignee of the '650 patent is Compression Technology Solutions LLC.

17.     The '650 patent is valid and enforceable and has been at all times relevant to the

instant action.

18.     The '650 patent claims an apparatus and method for processing an information

stream where information stream is received and the boundaries of input packets are indicated,

4

classifying the input packets according its intrinsic characteristics, parsing the input packets into output packets and generating the boundaries of output packets.  The output packets can comprise one or more input packets.

19.     For example, claim 9 of the '650 patent provides:

(9)     An information processing method for processing an information stream comprising input packets comprising:

receiving said information stream and receiving an indication of the boundaries in said information strum [stream] for each input packets;

classifying said input packets according to intrinsic characteristics of said input packets or transitions in quantitative characteristics of two or more of said input packets, and

parsing said input packets into output packets in response to said classifying, and generating  an indication of the boundaries of said output packets, wherein each of said output packets comprises or represents one of more said input packets.

'650 patent, Col. 15, ln. 46-59.

## THE INFRINGING PRODUCTS

### DEFENDANT CA's PRODUCTS

20.     Defendant CA, within the United States, manufactures, uses, offers for sale, or sells software systems, including, but not limited to, the ARCserve 12.5, that fall within the '650 patent.  For example, it falls within the scope of at least claim 9 because this system and/or software is for processing an information stream where the information stream is received and the boundaries of input packets are indicated, classifying the input packets according its intrinsic

characteristics, parsing the input packets into output packets and generating the boundaries of output packets. The output packets can comprise one or more input packets. The ARCserve software includes receiving, classifying, and parsing the input packets into output packets where the output packets one represent one or more input packets.

20.     At a minimum, CA's ARCserve contains each limitation set forth in at least claim 9 of the '650 patent and its dependent claims.

21.     Upon information and belief, additional CA's products also contain each limitation set forth in additional claims of the '650 patent.

22.     Defendant CA does not have a license or other authorization to practice the claims set forth in the '650 patent.

<u>DEFENDANT EMC'S PRODUCTS</u>

23.     Defendant EMC, within the United States, manufactures, uses, offers for sale, or sells backup systems, including, but not limited to, the Avamar deduplication system and Data Domain deduplication software, that fall within the '650 patent. For example, it falls within the scope of at least claim 9 because this system and software is for processing an information stream where the  information stream is received and the boundaries of input packets are indicated, classifying the input packets according its intrinsic characteristics, parsing the input packets into output packets and generating the boundaries of output packets. The output packets can comprise one or more input packets. The Avamar deduplication system and Data Domain deduplication software includes receiving, classifying, and parsing the input packets into output packets where the output packets one represent one or more input packets.

6

24.     At a minimum, the Avamar deduplication system and Data Domain deduplication software contains each limitation set forth in at least claim 9 of the '650 patent and its dependent claims.

25.     Upon information and belief, Data Domain's deduplication software is installed in IBM's Tivoli system which also, at a minimum, infringes claim 9 and of the '650 patent and its dependent claims.

26.     Upon information and belief, additional EMC products also contain each limitation set forth in additional claims of the '650 patent.

27.     Defendant EMC does not have a license or other authorization to practice the claims set forth in the '650 patent.

## DEFENDANT HP'S PRODUCTS

28.     Defendant HP, within the United States, manufactures, uses, offers for sale, or sells software including, but not limited to, StoreOnce, that fall within the '650 patent. For example, it falls within the scope of at least claim 9 because this software is for processing an information stream where the information stream is received and the boundaries of input packets are indicated, classifying the input packets according its intrinsic characteristics, parsing the input packets into output packets and generating the boundaries of output packets. The output packets can comprise one or more input packets. The StoreOnce software system includes receiving, classifying, and parsing the input packets into output packets where the output packets one represent one or more input packets.

29.     At a minimum, HP's StoreOnce contains each limitation set forth in at least claim 9 of the '650 patent and its dependent claims.

7

30.     Upon information and belief, additional HP's products also contain each limitation set forth in additional claims of the '650 patent.

31.     Defendant HP does not have a license or other authorization to practice the claims set forth in the '650 patent.

### DEFENDANT IBM's PRODUCTS

32.     Defendant IBM, within the United States, manufactures, uses, offers for sale, or sells software systems, including, but not limited to, the Tivoli system, that fall within the '650 patent.  For example, it falls within the scope of at least claim 9 because this system is for processing an information stream where the information stream is received and the boundaries of input packets are indicated, classifying the input packets according its intrinsic characteristics, parsing the input packets into output packets and generating the boundaries of output packets. The output packets can comprise one or more input packets.  The Tivoli system uses, upon information and belief, EMC's Data Domain software and includes receiving, classifying, and parsing the input packets into output packets where the output packets one represent one or more input packets.

33.     At a minimum, IBM's Tivoli system contains each limitation set forth in at least claim 9 of the '650 patent and its dependent claims.

34.     Upon information and belief, additional IBM's products also contain each limitation set forth in additional claims of the '650 patent.

35.     Defendant IBM does not have a license or other authorization to practice the claims set forth in the '650 patent.

### DEFENDANT NETAPP, INC'S PRODUCTS

36.     Defendant NetApp, within the United States, manufactures, uses, offers for sale, or sells software systems, including, but not limited to, the NetApp VTL Deduplication Software, that fall within the '650 patent.  For example, it falls within the scope of at least claim 9 because this software is for processing an information stream where the  information stream is received and the boundaries of input packets are indicated, classifying the input packets according its intrinsic characteristics, parsing the input packets into output packets and generating the boundaries of output packets.  The output packets can comprise one or more input packets.  The NetApp VTL Deduplication Software system includes receiving, classifying, and parsing the input packets into output packets where the output packets one represent one or more input packets.

37.     At a minimum, NetApp VTL Deduplication Software contains each limitation set forth in at least claim 9 of the '650 patent and its dependent claims.

38.     Upon information and belief, additional NetApp, Inc products also contain each limitation set forth in additional claims of the '650 patent.

39.     Defendant NetApp, Inc does not have a license or other authorization to practice the claims set forth in the '650 patent.

DEFENDANT QUANTUM'S PRODUCTS

40.     Defendant Quantum, within the United States, manufactures, uses, offers for sale, or sells deduplication software systems, including, but not limited to, the Quantum DXi Series Deduplication software, that fall within the '650 patent. For example, it falls within the scope of at least claim 9 because this system and software is for processing an information stream where the information stream is received and the boundaries of input packets are indicated, classifying the input packets according its intrinsic characteristics, parsing the input packets into output

9

packets and generating the boundaries of output packets. The output packets can comprise one or more input packets. The Quantum DXi Series Deduplication software includes receiving, classifying, and parsing the input packets into output packets where the output packets one represent one or more input packets.

41.     At a minimum, Quantum DXi Series Deduplication software contains each limitation set forth in at least claim 9 of the '650 patent and its dependent claims.

42.     Upon information and belief, additional Quantum products also contain each limitation set forth in additional claim 9 of the '650 patent.

43.     Defendant Quantum does not have a license or other authorization to practice the claims set forth in the '650 patent.

<u>DEFENDANT QUEST'S PRODUCTS</u>

44.     Defendant Quest, within the United States, manufactures, uses, offers for sale, or sells deduplication software systems, including, but not limited to, the Quest's Netvault Smartdisk software, that fall within the '650 patent. For example, it falls within the scope of at least claim 9 because this system and software is for processing an information stream where the information stream is received and the boundaries of input packets are indicated, classifying the input packets according its intrinsic characteristics, parsing the input packets into output packets and generating the boundaries of output packets. The output packets can comprise one or more input packets. The Quest's Netvault Smartdisk software includes receiving, classifying, and parsing the input packets into output packets where the output packets one represent one or more input packets.

45.     At a minimum, Quest's Netvault Smartdisk software contains each limitation set forth in at least claim 9 of the '650 patent and its dependent claims.

42.     Upon information and belief, additional Quest products also contain each limitation set forth in additional claim 9 of the '650 patent.

43.     Defendant Quest does not have a license or other authorization to practice the claims set forth in the '650 patent.

## COUNT I
## CA'S PATENT INFRINGEMENT UNDER 35 U.S.C. §271 OF THE '650 PATENT

44.     CTS incorporates by reference the allegations of paragraphs 1-43.

45.     CA has directly infringed the '650 patent at a minimum by making, using, selling and offering for sale products that fall with the scope of the '650 patent, including, but not limited to, the ARCserve 12.5.

46.     Upon information and belief, CA's has infringed the '650 patent in this district and elsewhere in the United States.

47.     CA has caused and will continue to cause CTS substantial damage and irreparable injury by virtue of its continuing infringement.

48.     CTS is entitled to recover from CA the damages sustained by CTS as a result of CA's wrongful acts in an amount subject to proof at trial and an injunction preventing CA from continuing its wrongful acts.

49.     Upon information and belief and after an opportunity for further discovery, CA's infringement of the '650 patent is willful and deliberate.

## COUNT II
## EMC'S PATENT INFRINGEMENT UNDER 35 U.S.C. §271 OF THE '650 PATENT

50.     CTS incorporates by reference the allegations of paragraphs 1-49.

51.     EMC has directly infringed the '650 patent at a minimum by making, using, selling and offering for sale products that fall with the scope of the '650 patent, including, but not limited to, the Avamar system and Data Domain deduplication software .

52.     Upon information and belief, EMC has infringed the '650 patent in this district and elsewhere in the United States.

53.     EMC has caused and will continue to cause CTS substantial damage and irreparable injury by virtue of its continuing infringement.

54.     CTS is entitled to recover from EMC the damages sustained by CTS as a result of EMC's wrongful acts in an amount subject to proof at trial and an injunction preventing EMC from continuing its wrongful acts.

55.     Upon information and belief and after an opportunity for further discovery, EMC's infringement of the '650 patent is willful and deliberate.

## COUNT III
## HP'S PATENT INFRINGEMENT UNDER 35 U.S.C. §271 OF THE '650 PATENT

56.     CTS incorporates by reference the allegations of paragraphs 1-55.

57.     HP has directly infringed the '650 patent at a minimum by making, using, selling and offering for sale products that fall with the scope of the '650 patent, including, but not limited to, the StoreOnce software.

58.     Upon information and belief, HP has infringed the '650 patent in this district and elsewhere in the United States.

59.     HP has caused and will continue to cause CTS substantial damage and irreparable injury by virtue of its continuing infringement.

60.    CTS is entitled to recover from HP the damages sustained by CTS as a result of HP's wrongful acts in an amount subject to proof at trial and an injunction preventing HP from continuing its wrongful acts.

61.    Upon information and belief and after an opportunity for further discovery, HP's infringement of the '650 patent is willful and deliberate.

## COUNT IV
## IBM'S PATENT INFRINGEMENT UNDER 35 U.S.C. §271 OF THE '650 PATENT

62.    CTS incorporates by reference the allegations of paragraphs 1-61.

63.    IBM has directly infringed the '650 patent at a minimum by making, using, selling and offering for sale products that fall with the scope of the '650 patent, including, but not limited to, the Tivoli System.

64.    Upon information and belief, IBM has infringed of the '650 patent in this district and elsewhere in the United States.

65.    IBM has caused and will continue to cause CTS substantial damage and irreparable injury by virtue of its continuing infringement.

66.    CTS is entitled to recover from IBM the damages sustained by CTS as a result of IBM's wrongful acts in an amount subject to proof at trial and an injunction preventing IBM from continuing its wrongful acts.

67.    Upon information and belief and after an opportunity for further discovery, IBM's infringement of the '650 patent is willful and deliberate.

## COUNT V
## NETAPP INC'S PATENT INFRINGEMENT UNDER 35 U.S.C. §271 OF THE '650 PATENT

68.    CTS incorporates by reference the allegations of paragraphs 1-67.

13

69.     NetApp, Inc has directly infringed the '650 patent at a minimum by making, using, selling and offering for sale products that fall with the scope of the '650 patent, including, but not limited to, the NetApp VTL Deduplication Software.

70.     Upon information and belief, NetApp, Inc has infringed the '650 patent in this district and elsewhere in the United States.

71.     NetApp, Inc has caused and will continue to cause CTS substantial damage and irreparable injury by virtue of its continuing infringement.

72.     CTS is entitled to recover from NetApp, Inc the damages sustained by CTS as a result of NetApp, Inc's wrongful acts in an amount subject to proof at trial and an injunction preventing NetApp, Inc from continuing its wrongful acts.

73.     Upon information and belief and after an opportunity for further discovery, NetApp, Inc's infringement of the '650 patent is willful and deliberate.

**COUNT VI**
**QUANTUM'S PATENT INFRINGEMENT UNDER 35 U.S.C. §271 OF THE '650 PATENT**

74.     CTS incorporates by reference the allegations of paragraphs 1-73.

75.     Quantum has directly infringed the '650 patent at a minimum by making, using, selling and offering for sale products that fall with the scope of the '650 patent, including, but not limited to, the Quantum DXi Series Deduplication software .

76.     Upon information and belief, Quantum has infringed the '650 patent in this district and elsewhere in the United States.

77.     Quantum has caused and will continue to cause CTS substantial damage and irreparable injury by virtue of its continuing infringement.

14

78.     CTS is entitled to recover from Quantum the damages sustained by CTS as a result of Quantum's wrongful acts in an amount subject to proof at trial and an injunction preventing Quantum from continuing its wrongful acts.

79.     Upon information and belief and after an opportunity for further discovery, Quantum's infringement of the '650 patent is willful and deliberate.

**COUNT VII**
**QUEST'S PATENT INFRINGEMENT UNDER 35 U.S.C. §271 OF THE '650 PATENT**

80.     CTS incorporates by reference the allegations of paragraphs 1-79.

81.     Quest has directly infringed the '650 patent at a minimum by making, using, selling and offering for sale products that fall with the scope of the '650 patent, including, but not limited to, the Quest's Netvault Smartdisk software .

82.     Upon information and belief, Quest has infringed the '650 patent in this district and elsewhere in the United States.

83.     Quest has caused and will continue to cause CTS substantial damage and irreparable injury by virtue of its continuing infringement.

84.     CTS is entitled to recover from Quest the damages sustained by CTS as a result of Quest's wrongful acts in an amount subject to proof at trial and an injunction preventing Quest from continuing its wrongful acts.

85.     Upon information and belief and after an opportunity for further discovery, Quest's infringement of the '650 patent is willful and deliberate.

**WHEREFORE**, CTS respectfully requests that the Court enter a judgment as follows:

A.     That Defendants have infringed the '650 patent under 35 U.S.C. §271;

B.     Permanently enjoining and restraining Defendants, their officers, directors, agents, servants, employees, licensees, successors, assigns, those in concert and participation

with them, and all persons acting on their behalf or within their control under 35 U.S.C. §283

from further acts that infringe the '650 patent, including but not limited to, making, using,

selling, offering to sell, importing, exporting, advertising, or otherwise using, contributing to the

use of, or inducing the use of all infringing equipment produced by Defendants;

       C.      Requiring Defendants to:

          1.      Send a copy of any decision in this case in favor of CTS to each person or

entity to whom Defendants have sold or otherwise distributed any products found to infringe the

'650 patent, or induced to infringe the '650 patent, and informing such persons or entities of the

judgment and that the sale or solicited commercial transaction was wrongful;

          2.      Recall and collect from all persons and entities that have purchased

wholesale or are a distributor of any and all products found to infringe the '650 patent that were

made, offered for sale, sold, or otherwise distributed by Defendants, or anyone acting on its

behalf;

          3.      Destroy or deliver to CTS all infringing equipment produced by

Defendants; and

          4.      File with the Court and serve upon CTS, within thirty (30) days after entry

of final judgment in this case, a report in writing and subscribed under oath setting forth in detail

the form and manner in which Defendants have complied with the Court's orders as prayed for.

       D.      Awarding CTS patent infringement damages and pre-judgment interest pursuant

to 35 U.S.C. §284 including, but not limited to, lost profits and/or a reasonable royalty;

       E.      Awarding treble damages for willful infringement pursuant to 35 U.S.C. §284;

       F.      Declaring the case exceptional and awarding CTS reasonable costs and attorneys

fees pursuant to 35 U.S.C. §285;

G.    Granting CTS such other and further relief as justice and equity may require.

**JURY DEMAND**

CTS requests a jury trial.


Respectfully submitted,
COMPRESSION TECHNOLOGY SOLUTIONS LLC

By its attorneys,
SIMMONS BROWDER GIANARIS
    ANGELIDES & BARNERD LLC

Dated:  September 12, 2011            By:  /s/ Paul A. Lesko
                                          Paul A. Lesko – E.D.Mo. No. 51914
                                          Jo Anna Pollock – E.D.Mo. No. 50430
                                          Stephen C. Smith – E.D.Mo. No. 6279828
                                          Chris Luzecky – E.D.Mo. No. 5221978
                                          One Court Street
                                          Alton, IL  62002
                                          Ph:  618.259.2222
                                          Fax:  618.259.2251
                                          E-mail:  plesko@simmonsfirm.com
                                                   jpollock@simmonsfirm.com
                                                   ssmith@simmonsfirm.com
                                                   cluzecky@simmonsfirm.com